IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re | ) | CIVIL 17-00437 LEK-KSC |
| | ) | |
| RICHARD ALLEN PRICE, JR., | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| THOMAS W. COULSON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ELIZABETH A. KANE, Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

**ORDER DENYING APPEAL AND AFFIRMING THE BANKRUPTCY COURT'S ORDER**

On August 17, 2017, in In re Price, Bankruptcy Case
No. 16-00036, the bankruptcy court issued its Memorandum of
Decision on Motion for Partial Summary Judgment ("Bankruptcy
Court's Order"). 575 B.R. 461 (Bankr. D. Hawaiʻi 2017).
Appellant Thomas W. Coulson ("Coulson" or "Appellant") filed his
Notice of Appeal and Statement of Election ("Notice of Appeal")
on August 31, 2017. [Dkt. no. 1.] On October 31, 2017,
Appellant filed his opening brief. [Dkt. no. 3.] Appellee
Elizabeth A. Kane, Trustee ("Appellee" or "Trustee") filed her
answering brief on December 4, 2017, and Appellant filed his
reply brief on December 18, 2017. [Dkt. nos. 7, 9.] This matter
came on for hearing on March 12, 2018. Appellant's appeal is

denied, and the Bankruptcy Court's Order is affirmed, for the
reasons set forth below.

**BACKGROUND**

In the instant appeal, Appellant challenges the
Trustee's avoidance of a transfer of $123,716.23 to him, which
occurred less than ninety days before Debtor Richard Allen Price
("Debtor") filed his bankruptcy petition on January 15, 2016.
Price, 575 B.R. at 464. Under 11 U.S.C. § 547(b), the bankruptcy
trustee is authorized to avoid certain preferential transfers to
creditors made within ninety days before a debtor files his
bankruptcy petition.[1] The historical facts of this case are
undisputed. Appellant argues reversal is warranted because the
relevant transfer occurred at an earlier stage of their dispute,
outside the ninety-day preference period.

In 2002, Appellant terminated his right to purchase
certain real property in Honolulu, Hawai`i ("Property") in favor
of Debtor, in exchange for Debtor's written promise that
Appellant would receive half of any net profit, if the Property
were resold under certain conditions ("Agreement"). Price, 575
B.R. at 463. The Agreement was not recorded at the time. In
2010, Appellant recorded with the Bureau of Conveyances ("BOC")

---

[1] Debtor's bankruptcy "case was converted [from chapter 13]
to chapter 7 on January 27, 2016." Price, 575 B.R. at 464. The
parties do contend this date affects the § 547(b) preference
period.

an Affidavit of Adverse Claim ("Affidavit") and attached the Agreement as an exhibit. Id. Debtor could not sell the Property because the Affidavit rendered his title unmarketable.[2] Id. at 466. In 2011, Debtor sued Appellant in the Circuit Court of the First Circuit of the State of Hawai`i ("state court") to invalidate the Agreement and Affidavit. Id. at 463. Appellant counterclaimed seeking specific performance and damages. During the pendency of the litigation, the parties agreed that: 1) Appellant would withdraw the Affidavit so that Debtor could sell the Property; and 2) Debtor would deposit the net proceeds into an escrow account. Id.

Debtor sold the Property and deposited $122,635.22, the entirety of the net proceeds, into an escrow account governed by Joint Escrow Instructions ("Escrow Instructions"), which the parties executed March 16, 2012. [Opening Brief, Appellant's Appendix to Opening Brief (Excerpts of the Records) ("Record

---

[2] The Affidavit functioned as a lis pendens, also called a notice of pendency of action, the recordation of which is authorized by Haw. Rev. Stat. § 634-51. The Hawai`i Supreme Court has recognized that "the practical effect of a recorded lis pendens is to render a . . . property unmarketable." S. Utsunomiya Enters., Inc. v. Moomuku Country Club, 75 Haw. 480, 502, 866 P.2d 951, 963 (1994) (citations and internal quotation marks omitted).

Appendix") at COULSON 105-06 (Escrow Instructions).[3]]  In

pertinent part, the Escrow Instructions provided that:

> The escrow funds shall only be released upon any
> one of the following occurrences:  (1) receipt by
> the Escrow Holder of a document signed by both
> parties directing the Escrow Holder to release the
> funds; or (2) the receipt by the Escrow Holder of
> a court order directing the Escrow Holder to
> release the funds; or (3) no mutual instructions
> are received by the Escrow Holder by the close of
> business day on December 3, 2012, after which time
> the Escrow Holder will release the funds by way of
> a check to be deposited into a court-supervised
> account at The First Circuit Court, State of
> Hawaii.  The court-supervised account will be
> established by appropriate motion or stipulation
> of the parties no later than December 2, 2012,

 with the account number provided to Escrow Holder by December 3,
2012.

[Id.]  Later, Debtor obtained a court order transferring the

funds to a court-supervised account, which was governed by the

same terms as in the Escrow Instructions.  Price, 575 B.R. at

463, 467 n.30.

On July 24, 2012, the state court granted summary

judgment in favor of Appellant on his counterclaim against

---

[3] The Escrow Instructions were attached as Exhibit A to the
Declaration of Counsel, which was attached to Price's Motion to
Deposit Funds in Court ("Deposit Motion"), filed May 3, 2012, in
state court.  [Record Appendix at COULSON 99-110.]  The Deposit
Motion was Exhibit 4 to the Declaration of Simon Klevansky,
attached to the Separate Concise Statement in Support of
Trustee's Motion for Partial Summary Judgment on Count III of the
Complaint, filed on June 13, 2017 in the bankruptcy court
("Klevansy Summary Judgment Declaration").  [Id. at COULSON 58-67
(concise statement), COULSON 200-03 (declaration).]

Debtor, and ruled Debtor was liable to Appellant for "damages 'in an amount to be proven.'"  Id. at 463 (footnote omitted).  Later,

> the state court entered a minute order on January 30, 2015, determining that [Appellant] was entitled to recover $362,884.84.
>
> On November 20, 2015, the state court entered a Final Judgment in the amount of $423,601.17 and directed the clerk of the state court to pay to [Appellant] the funds deposited with the clerk in partial satisfaction of the judgment.  For reasons that the record does not explain, the clerk did not immediately comply with this directive.  The state court entered an amended final judgment on January 4, 2016.  On January 7, 2016, the clerk disbursed $123,716.23 to [Appellant] in partial repayment of the state court judgment.

Id. at 463-64 (footnotes omitted).

The bankruptcy court ruled the Trustee was entitled to recover the $123,716.23 because the relevant transfer occurred within the ninety-day preference period – either when the state court entered its final judgment or when the clerk disbursed the funds.  Price, 575 B.R. at 467.  In the instant appeal, Appellant argues the bankruptcy court erred because the relevant transfer occurred either:  1) when he filed his Affidavit with the BOC in 2010; 2) when the net proceeds were deposited in the escrow account; 3) when the net proceeds were deposited in the court-supervised account; or 4) when the state court issued its Minute Order on January 15, 2015.

This Court has stated:

> This court reviews a bankruptcy
> court's findings of fact for clear error
> and its conclusions of law de novo.  See
> In re Kimura (United States v. Battley),
> 969 F.2d 806, 810 (9th Cir. 1992) ("The
> Court reviews the bankruptcy court's
> findings of fact under the clearly
> erroneous standard and its conclusions
> of law de novo.").  The court "must
> accept the Bankruptcy Court's findings
> of fact, unless the court is left with
> the definite and firm conviction that a
> mistake has been committed.  Mixed
> questions of law and fact are reviewed
> de novo." In re JTS Corp., 617 F.3d
> 1102, 1109 (9th Cir. 2010) (quotation
> marks and citations omitted).

In re Lee, CIVIL NO. 15-00278 SOM/RLP, 2015 WL
7274035, at *1 (D. Hawai`i Nov. 17, 2015).  The
United States Supreme Court has stated:

> [a] finding is 'clearly erroneous' when
> although there is evidence to support
> it, the reviewing court on the entire
> evidence is left with the definite and
> firm conviction that a mistake has been
> committed.  This standard plainly does
> not entitle a reviewing court to reverse
> the finding of the trier of fact simply
> because it is convinced that it would
> have decided the case differently.  The
> reviewing court oversteps the bounds of
> its duty under Fed. R. Civ. P. 52(a) if
> it undertakes to duplicate the role of
> the lower court.  In applying the
> clearly erroneous standard . . . ,
> [reviewing] courts must constantly have
> in mind that their function is not to
> decided factual issues de novo.  If the
> [lower] court's account of the evidence
> is plausible in light of the record
> viewed in its entirety, the [reviewing
> court] may not reverse it even though

> convinced that had it been sitting as
> the trier of fact, it would have weighed
> the evidence differently. Where there
> are two permissible views of the
> evidence, the factfinder's choice
> between them cannot be clearly
> erroneous.
>
> Anderson v. City of Bessemer, 470 U.S. 564, 573-74
> (1985) (some alterations in Anderson) (citations
> and some internal quotation marks omitted). The
> standards described in Anderson apply when a
> district court reviews the factual findings of a
> bankruptcy court. See, e.g., Ingram v. Burchard,
> 482 B.R. 313, 322 (N.D. Cal. 2012); In re Daewoo
> Motor Am., Inc., 471 B.R. 721, 732 (C.D. Cal.
> 2012), aff'd, 554 Fed. Appx. 638 (9th Cir. 2014);
> In re Folsom, Civil No. 10CV2440 L(NLS), 2011 WL
> 3489681, at *1 (S.D. Cal Aug. 8, 2011), aff'd sub
> nom., Folsom v. Davis, 513 Fed. Appx. 651 (9th
> Cir. 2013).

Sebetich v. Woods, CIVIL 15-00233 LEK-BMK, 2016 WL 8710426, at

*4-5 (D. Hawai`i Jan. 29, 2016) (alterations in Sebetich).

## DISCUSSION

This appeal turns on whether the relevant transfer of

the Debtor's property interest occurred within the ninety-day

preference period.[4]  For purposes of an avoidance action under

§ 547(b), "property of the debtor" does not include "'[p]roperty

in which the debtor holds . . . only legal title and not an

equitable interest.'"  Begier v. Internal Revenue Serv., 496 U.S.

53, 59 (1990) (quoting 11 U.S.C. § 541(d)).  Appellant argues

---

[4] The Trustee does not contend the one-year preference
period applicable to insiders applies.  See § 547(b)(4)(B).

transactions and events outside the preference period left Debtor

with only bare legal title to the proceeds.

The Ninth Circuit has stated:

> Pursuant to Section 547 the trustee in
> bankruptcy may avoid transfers of property made by
> the debtor when a transfer meets certain
> requirements. "The purpose of this provision is
> to discourage creditors 'from racing to the
> courthouse to dismember the debtor during his
> slide into bankruptcy' and to 'facilitate the
> prime bankruptcy policy of equality of
> distribution among creditors of the debtor.'" <u>In
> re Vance</u>, 721 F.2d 259 (9th Cir. 1983) (quoting
> H.R. Rep. No. 95-595, 95th Cong., 1st Sess.,
> reprinted in, 1978 U.S. Code Cong. & Ad. News
> 5787, 5963, 6138).

> The eligible transfers are referred to as
> "preferences" because they are deemed to be
> transfers that favor one creditor to the detriment
> of other creditors. Outside of the bankruptcy
> context such transfers are unobjectionable: The
> payments are properly earned and owed. But in
> bankruptcy, the concern is that a debtor, aware of
> imminent bankruptcy, will try to pay favored
> creditors which it may want or need to deal with
> in the future, at the expense of not paying other
> creditors. <u>See</u> T. Jackson, The Logic and Limits
> of Bankruptcy Law 123-25 (1986). When a transfer
> is avoided the recipient of the transfer must
> return the property or equivalent value to the
> debtor estate.

<u>In re Ehring</u>, 900 F.2d 184, 186 (9th Cir. 1990). In a preference

avoidance action, typically "the equities clearly favor" a

creditor over a defaulted debtor, but "the balance of the

equities between [one creditor and the debtor's] other creditors

is far from clear." <u>See</u> <u>In re Lewis W. Shurtleff, Inc.</u>, 778 F.2d

1416, 1419-20 (9th Cir. 1985). Federal courts must "necessarily

act very cautiously in exercising . . . equitable power in favor

of one group of potential creditors at the expense of other

creditors, for ratable distribution among all creditors is one of

the strongest policies behind the bankruptcy laws." <u>In re N. Am.</u>

<u>Coin & Currency, Ltd.</u>, 767 F.2d 1573, 1574 (9th Cir. 1985)

(declining to find a constructive trust had been imposed on

certain property).

"Whether a particular action constitutes a 'transfer'

is a matter of federal law." <u>In re Costas</u>, 555 F.3d 790, 793

(9th Cir. 2009).  But "'[i]n the absence of any controlling

federal law, "property" and "interests in property" are creatures

of state law.'"  <u>Id.</u> (alteration in <u>Costas</u>) (quoting <u>Barnhill v.</u>

<u>Johnson</u>, 503 U.S. 393, 398, 112 S. Ct. 1386 (1992)).

## I.    <u>The Filing of the Affidavit</u>

Appellant argues the December 13, 2010 recordation with

the BOC of the Affidavit, *i.e.*, the *lis pendens*, was the relevant

transfer.  Specifically, Appellant argues the Affidavit:  was

like a consensual lien because its recordation was authorized by

the 2002 Agreement; encumbered Debtor's title, and prevented

Debtor from selling the Property; and sufficed to prevent a

subsequent judgment creditor from obtaining an interest in the

Property superior to Appellant's.  Appellant argues the

bankruptcy court erred by ignoring the state court's grant of

summary judgment in his favor, which is binding under the <u>Rooker-</u>

<u>Feldman</u> doctrine and principles of claim preclusion.[5]  This Court disagrees.

This case does not implicate the <u>Rooker</u>-<u>Feldman</u> doctrine because Plaintiff is not asking this Court to review and reject the state court's judgment.  <u>See</u> <u>Tiburcio v. Reo Props. Corp.</u>, Civil No. 15-00039 LEK-RLP, 2015 WL 3463507, at *2 (D. Hawai`i May 29, 2015).  This Court has stated:

> "The <u>Rooker</u>-<u>Feldman</u> doctrine provides that federal district courts lack jurisdiction to exercise appellate review over final state court judgments." <u>Henrichs v. Valley View Dev.</u>, 474 F.3d 609, 613 (9th Cir 2007) (some citations omitted) (citing <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 415-16, 44 S. Ct. 149, 68 L. Ed. 362 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 482-86, 103 S. Ct. 1303, 75 L. [Ed. 2d 206 (1983)].  "Essentially, the doctrine bars 'state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced' from asking district courts to review and reject those judgments." <u>Id.</u> (quoting <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)).

<u>Id.</u>  Even if "the federal suit [is] claim-precluded under [28 U.S.C.] § 1738," the "<u>Rooker</u>-<u>Feldman</u> [doctrine does not] bar jurisdiction." <u>Noel v. Hall</u>, 341 F.3d 1148, 1164 (9th Cir. 2003).

Moreover, this case does not implicate claim preclusion.  This district court has stated:

---

[5] <u>See</u> <u>Dist. of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983); <u>Rooker v. Fid. Tr. Co.</u>, 263 U.S. 413 (1925).

Under 28 U.S.C. § 1738, "a federal court 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was entered.'" <u>White v. City of Pasadena</u>, 671 F.3d 918, 926 (9th Cir. 2012) (citing <u>Migra v. Warren City Sch. Dist. Bd. of Ed.</u>, 465 U.S. 75, 81 (1984)). . . . In Hawaii,

> the test for collateral estoppel has four elements: (1) the fact or issue in the present action is identical to the one decided in the prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; (3) the parties present in the action are the same or in privity with the parties in the prior action; and (4) the fact or issue decided in the prior action was actually litigated, finally decided, and essential to the earlier valid and final judgment.

> <u>Dannenberg v. Hawaii</u>, 139 Haw. 39, 60, 383 P.3d 1177, 1198 (2016).

<u>Kuehu v. United Airlines, Inc.</u>, Civ. No. 16-00216 ACK-KJM, 2017 WL 2312475, at *4 (D. Hawai`i May 26, 2017) (some citations omitted). The first element of claim preclusion is not satisfied. The state court granted Appellant's motion for summary judgment, which sought, *inter alia*, a "declar[ation] that the Agreement . . . is a valid and enforceable contract" and a determination that Debtor was liable to Appellant for "breach of contract damages, in an amount to be proven, resulting from [Debtor's] breach of the Agreement." [Record Appendix at COULSON 123 (from Appellant's state court motion for summary

judgment, filed 6/19/12).[6]]  The state court did not decide

whether Appellant had a security interest in the Property, and if

so, whether it was perfected.  Therefore, claim preclusion does

not prevent this Court from deciding that issue.  This Court now

considers whether the Agreement and Affidavit granted Appellant a

perfected security interest in the Property so as to warrant

reversing the bankruptcy court's grant of summary judgment in

favor of the Trustee.[7]

    The Ninth Circuit has stated:

> "No magic words or precise form are necessary to
> create or provide for a security interest so long
> as the minimum formal requirements of the [Uniform
> Commercial] Code are met."  In re Amex-Protein
> Dev. Corp., 504 F.2d 1056, 1058-59 (9th Cir.
> 1974).  "Although the U.C.C. does not specifically
> state that intention to create a security
> agreement is an element necessary to creating a
> valid security agreement, it is clear that
> intention to do so is required."  In re Airwest
> Int`l, 70 B.R. 914, 919 (Bkrtcy. D. Hawai`i 1987).
> Determining whether the parties intended to create
> a security interest is a two-step process.  The
> court must find both language in a written
> agreement that objectively indicates the parties'
> intent to create a security interest and the
> presence of a subjective intent by the parties to
> create a security interest.  See id. (citing White
> & Summers, Handbook of the Law Under the Uniform
> Commercial Code, § 23-3 (1980)).  The intent to

_____

    [6] The June 19, 2012 state court motion for summary judgment
was Exhibit 7 to the Kelvansky Summary Judgment Declaration.
[Record Appendix at COULSON 122-43.]

    [7] In light of these rulings, the Trustee's argument that
Appellant waived arguments relying on the Rooker-Feldman doctrine
and claim preclusion by failing to argue them to the bankruptcy
court is not reached.

> create a security interest must appear on the face
> of a written document executed by the debtor.  <u>See</u>
> <u>In re Ace Lumber Supply, Inc.</u>, 105 B.R. 964, 968
> (Bankr. D. Mont. 1989).

<u>In re CFLC, Inc.</u>, 166 F.3d 1012, 1016 (9th Cir. 1999).

"One of [the bankruptcy trustee's] powers is the ability to take priority over or 'avoid' security interests that are unperfected under applicable state law." <u>In re First T.D. & Inv., Inc.</u>, 253 F.3d 520, 526 (9th Cir. 2001) (internal quotation marks and citation omitted).  "'Perfection' and 'priority' . . . are separable but intertwined concepts.  When a lender has properly perfected a security interest in property . . . , lender may obtain priority — the ability to assert that its interest ranks before those of other parties with claims to that property." <u>In re Cybernetic Servs., Inc.</u>, 252 F.3d 1039, 1044 n.1 (9th Cir. 2001) (internal quotation marks and citation omitted).  Under Hawai`i law, "[a]bsent a statutory or common law exception, a secured creditor with a perfected security interest in collateral is entitled to priority over a subsequent lien creditor seeking to claim the same collateral." <u>Bank of Hawaii</u> <u>v. DeYoung</u>, 92 Hawai`i 347, 353, 992 P.2d 42, 48 (2000) (some citations omitted) (citing <u>W.S. Badcock Corp. v. Myers</u>, 696 So. 2d 776 (Fla. App. 1996) ("A perfected secured creditor has priority over an unsecured creditor and over a subsequent lien creditor, even the trustee in bankruptcy.")).

Appellant fails to carry his burden on appeal to show the Agreement and Affidavit functioned to grant him a security interest in the Property or its proceeds.  Appellant's "Opening Brief was required to contain 'the argument, which [means] appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'"  See Higashi v. Takazawa, CIVIL 16-00479 LEK-RLP, 2018 WL 692407, at *2 (D. Hawai`i Feb. 2, 2018) (alteration in Higashi) (quoting Fed. R. Bankr. P. 8014(a)(8)).  Appellant points to no "language in [the Agreement] that objectively manifests the parties' intent to create a security interest" in the Property.  See CFLC, 166 F.3d at 1016.  This Court therefore affirms the bankruptcy court's conclusion that the 2002 Agreement did not grant Appellant a security interest in the Property.  See Price, 575 B.R. at 465 ("The agreement gave [Appellant] a contingent and time-limited right to payment of an amount of money measured in part by the resale price of the property.  The agreement is unambiguous in this respect:  it did not grant [Appellant] a lien on or other interest in the real property.").  Because Appellant fails to show the Agreement and Affidavit granted him a security interest in the Property, he necessarily fails to show he had a perfected security interest.

Next, the Court considers whether the Affidavit created a security interest by agreement.  Recordation of the Affidavit

was a unilateral act by Appellant. The Affidavit does not show the parties' mutual intent to grant Appellant a security interest in the Property. See CFLC, 166 F.3d at 1016. Thus, the bankruptcy court correctly concluded the Affidavit "could not function as a grant of an interest in the property." See Price, 575 B.R. at 466.

Next, Appellant argues his filing of the Affidavit is the date of the relevant § 547 transfer because it prevented any subsequent judgment creditor from obtaining an interest in the Property superior to his. The Ninth Circuit has stated that, in a preference avoidance action, a court's final judgment relates back to the recordation of a *lis pendens* only if "following [the creditor's] filing of its lis pendens, a bona fide purchaser of the [debtor's] real property could acquire an interest superior to [the creditor's] interest in the property. Determining what is necessary to perfect a transfer of an interest in real property depends entirely on state law." See In re Lane, 980 F.2d 601, 604 (9th Cir. 1992) (internal citation and quotation marks omitted). The Ninth Circuit then proceeded to analyze whether, under applicable state law, the plaintiff's recordation of a *lis pendens* secured his claim against the property. Id. Under Hawai`i law, a *lis pendens* is only effective to give notice of a claim to title or possession of real property. S. Utsunomiya, 75 Haw. at 513, 866 P.2d at 967. Filing a *lis*

15

*pendens* is ineffective to secure a claim for money damages against the owner of real property.  <u>Id.</u> at 511-12, 866 P.2d at 966-67.  Because the Affidavit merely gave notice of Appellant's claim for money damages against the owner of the Property, its filing was insufficient to perfect any security interest by Appellant in the Property.  Therefore, the state court's final judgment does not relate back to the filing of the Affidavit. <u>See</u> <u>Lane</u>, 980 F.2d at 604.

The Agreement and the Affidavit neither:  1) granted Appellant a security interest in the Property; nor 2) determined the date of the relevant § 547 transfer.

## II.  **The Deposit in Escrow**

Appellant relies on <u>In re O.P.M. Leasing Services, Inc.</u>, and argues the relevant transfer occurred when Debtor deposited the net proceeds from the sale of the Property into escrow because "'[c]ourts of bankruptcy recognize that money held in escrow is not property which vests in the trustee in bankruptcy.'"  <u>See</u> 46 B.R. 661, 667-68 (Bankr. S.D.N.Y. 1985) (quoting <u>Gulf Petroleum, S.A. v. Collazo</u>, 316 F.2d 257, 261 (1st Cir. 1963)).  Appellant argues bankruptcy courts hold the relevant transfer "occurs at the time the debtor deposits the funds into the escrow account[, and] the date the funds are released to the grantee is . . . [ir]relevant under [] § 547(b)." <u>In re Anthony Sicari, Inc.</u>, 144 B.R. 656, 661 (Bankr. S.D.N.Y.

1992) (internal citations and quotation marks omitted), *aff'd*, 151 B.R. 60 (S.D.N.Y. 1993).

To prevail on his escrow theory, Appellant must show the ultimate transfer of the funds to him, which occurred inside the preference period, did not "deplete[] the assets of the estate available for distribution to creditors." See In re Tenderloin Health, 849 F.3d 1231, 1244 (9th Cir. 2017) (footnote omitted) (citing Begier, 496 U.S. at 58, 110 S. Ct. 2258 (stating the preference provision is designed to "preserve the property includable within the bankruptcy estate")). In other words, Appellant must show the Escrow Instructions diminished Debtor's interest in the escrowed funds sufficiently so that they were not property of the bankruptcy estate. See In re Pettit, 217 F.3d 1072, 1078 (9th Cir. 2000) (depositor's "funds never became 'property of the estate'" because they were held "as judgment security in the event" of an adverse outcome at trial against the depositor); see also Tenderloin Health, 849 F.3d at 1248 n.14 ("[T]he diminution of estate doctrine is used to determine whether property that is transferred belongs to the debtor, not whether a transaction constitutes a transfer." (citation and internal quotation marks omitted)). In cases relied on by Appellant, the creditors showed the escrowed funds were not property of the bankruptcy estate where the escrow agreement "'left the debtor with only a contingent right to the escrowed

funds. . . . [T]he transfer that occurred when the condition of
the escrow was met . . . [therefore] did not deprive the debtor's
estate of anything of value.'" See Sicari, 144 B.R. at 662 (some
citations omitted) (quoting Matter of Newcomb, 744 F.2d 621, 627
(8th Cir. 1984), *cited with approval in* Matter of O.P.M. Leasing
Servs., Inc., 46 B.R. at 667–68).

Appellant errs insofar as he assumes outcomes in other
cases involving escrows apply here. "[M]erely labeling a
specific delivery of property as an escrow . . . does not give
such characteristic to the particular transaction." Am. Serv.
Co. v. Henderson, 120 F.2d 525, 530 (4th Cir. 1941). Whether
property deposited into "an escrow constitutes property of a
debtor's estate depends entirely on the nature and circumstances
of the escrow in question." In re Taylor, No. 94-01878, 1995 WL
577361, at *4 (Bankr. D. Idaho Oct. 3, 1995).

Appellant fails to show that, by subjecting the
escrowed funds to the Escrow Instructions, Debtor's property
interest in the funds was diminished such that the subsequent
funds transfer to Appellant "did not deprive [D]ebtor's estate of
anything of value." See Tenderloin Health, 849 F.3d at 1244
(citations and internal quotation marks omitted). Appellant
cites no particular terms of the Escrow Instructions as
purportedly causing Debtor's interest in the escrowed funds to be
without value to the bankruptcy estate. Cf. O.P.M. Leasing, 46

18

B.R. at 664 ("Section 4 of the escrow agreement required the
Escrow Agent, upon written notice from [grantee that granting
condition was satisfied], to release to [grantee the required]
portion of the escrow deposit."); id. at 667 (an effective
"escrow 'creates in the grantee [] an equitable interest in the
property [because] upon full performance of the conditions
according to the escrow agreement, title will vest at once in
[the grantee]'" (quoting 28 Am. Jur. 2d Escrow § 10 (1964)).  The
only case-specific facts Appellant provides in support of his
escrow argument are his claims that, because the Affidavit
granted him a security interest in the Property, he also had a
security interest in the proceeds.  [Opening Brief at 12, 23.]
As Appellant's claim that the Affidavit granted him a security
interest in the Property has been rejected, his claim to have a
security interest in the proceeds is likewise rejected.
Appellant also asserts that, under the Escrow Instructions,
Debtor "only had a contract right to a portion of the proceeds."
[Id. at 20].  Appellant cites no particular provision of the
Escrow Instructions producing this result.  Mere assertion is
insufficient to warrant reversal of the bankruptcy court.  See
Greenwood v. F.A.A., 28 F.3d 971, 977 (9th Cir. 1994) ("We review
only issues which are argued specifically and distinctly in a
party's opening brief.  We will not manufacture arguments for an
appellant, and a bare assertion does not preserve a claim."

(internal citation omitted)).  Because Appellant has not met his

burden on the escrow argument, this Court may stop its analysis

here.  However, for completeness, it will also address the

Trustee's argument that the instant Escrow Instructions are

distinguishable from the escrow agreements in cases relied on by

Appellant.

The Trustee argues the escrow deposit was not the

controlling transfer because it did not materially alter the

parties' rights and merely extended the status quo.  This Court

agrees.  As the bankruptcy court explained,

> At the outset, [Debtor] owned the property.  [He]
> could not sell it and use the proceeds as [he]
> wished, however, because [Appellant's] recorded
> affidavit rendered [his] title unmarketable.  [He]
> could only get and use the proceeds if [Appellant]
> agreed to remove his affidavit or a court
> determined that [Appellant's] claims were
> invalid. . . .  The escrow instructions provided
> that the funds would be released only upon mutual
> agreement of the [parties] or the entry of a court
> order.  In other words,[Debtor's] interest in the
> escrowed funds were subject to the same
> restrictions as . . . before the sale. . . .
> [T]he deposit of the funds in escrow did not
> diminish [Debtor's] rights in or enhance
> [Appellant's] claims to the funds[.]

Price, 575 B.R. at 466.  For Appellant to show that the escrow

deposit sufficiently changed Debtor's interest in the funds so

that it was without value and did not become part of the

bankruptcy estate, it is at least necessary that the escrow

deposit altered the status quo.  Here the Escrow Instructions

preserved the status quo, and thus the escrow deposit does not affect when the relevant § 547 transfer occurred.

Further, unlike escrow agreements sufficient for purposes of § 547 to divest a debtor of his interest property, the instant Escrow Instructions' terms neither 1) specify a definite granting condition; nor 2) provide that the grantor has pledged its interest in the escrowed property. Hawai`i law determines "whether the . . . escrow funds were brought into the bankruptcy estate." <u>See</u> <u>In re Dreier LLP</u>, 527 B.R. 126, 133 (S.D.N.Y. 2014) (quoting <u>Butner v. United States</u>, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979)); <u>see also</u> <u>Costas</u>, 555 F.3d at 793 ("'interests in property' are creatures of state law"). Under Hawai`i law, an effective escrow agreement must define the granting condition, which when satisfied, requires the escrow holder to deliver the escrowed property to the grantee. <u>Whitlow v. Jennings</u>, 40 Haw. 523, 530 (Hawai`i Terr. 1954). The Escrow Instructions do not define a granting condition, apart from the general instruction to the escrow holder to release the funds only upon receipt of instructions signed by both parties or a court order. [Record Appendix at COULSON 105 (Escrow Instructions).] The granting condition must be "much more definite" to "to defeat the interest of the [] Trustee[]." <u>See</u> <u>In re Friedman & Wexler, LLC</u>, 494 B.R. 724, 736 (Bankr. N.D. Ill. 2013). In <u>Friedman & Wexler</u>, the court considered a creditor's

21

claim to funds the debtor deposited in escrow, during litigation, subject to the condition "[n]o money shall be released from the account without a court order." Id. at 735. Because those instructions lacked a definite granting condition, the bankruptcy court concluded "the escrowed funds are estate funds, and [the creditor's] claim is, in this regard, an unsecured claim to be treated on par with the other unsecured claims against the bankruptcy estates." Id. at 737. The same applies here. In addition, the Debtor never pledged his interest in the escrowed funds. Cf. Pettit, 217 F.3d at 1079-80 (both the parties and the judge had "all referred to the [deposited] funds . . . as 'security,' and there is no doubt that this was what the funds were to be used for'"). Under these facts, even after the execution of the Escrow Instructions, the Debtor retained an interest in the escrowed funds, and the deposit into escrow did not result in any § 547 transfer.

## III. *In Custodia Legis*

Appellant cites In re Roman and argues that, once the funds were moved from the escrow to an account supervised by the state court, the funds were *in custodia legis* and could not be reached by other creditors or the bankruptcy trustee. See In Re Roman, Case No. 6:13-bk-22482-MH, 2017 WL 1321758 (Bankr. C.D. Cal. Apr. 7, 2017), *aff'd in part, vacated in part, rev'd in part*, 2017 WL 5587610 (B.A.P. 9th Cir. Nov. 20, 2017).

In _Roman_, the Bankruptcy Appellate Panel concluded funds deposited with the court were not held _in custodia legis_ because the court did not "retain[] exclusive jurisdiction over the Funds," given that "the parties [could] release the Funds by written agreement." 2017 WL 5587610, at *4. The same circumstance is present in this case. Appellant does not dispute that, as with funds in the custody of a private escrow holder, the parties could withdraw the funds from the court-supervised account by mutual agreement. See _Price_, 575 B.R. at 467 n.30 (funds were deposited with the court on the same terms as with the private escrow holder). Therefore the funds were not held _in custodia legis_.[8]

## IV. **State Court Minute Order**

Appellant argues the controlling transfer occurred at least by January 30, 2015, when the state court issued its Minute Order determining that Debtor owed Appellant more than the amount of funds on deposit. Appellant asserts the controlling transfer at least occurred by this date because, afterwards, "no one other than [Appellant] could have sought the release of the funds." [Opening Brief at 29.] The bankruptcy court considered this argument and rejected it because it was asserted without any supporting authority and because "it is inconsistent with the

---

[8] In light of this ruling, the Trustee's argument that Appellant waived the _in custodia legis_ argument by failing to argue it to the bankruptcy court is not reached.

plain terms of the escrow instructions." <u>Price</u>, 575 B.R. at 467.

Appellant offers no authority for this proposition on appeal, nor

does he explain why, if it were true, he did not obtain release

of the funds after issuance of the January 30, 2015 Minute Order.

Appellant further argues the state court's entry of

"final judgment was simply a ministerial act based on the earlier

[minute] order." [Opening Brief at 29-30.]  However, Appellant

cites no authority for the proposition that issuance of a minute

order causes a judge's subsequent entry of a final order to be

merely a ministerial act.  This proposition is doubtful because a

minute order is not equivalent to a final judgment.  <u>See</u> <u>Wailehua</u>

<u>v. Mindoro</u>, No. 24200, 2003 WL 393769, at *1 (Hawai`i Feb. 20,

2003) (concluding "the circuit court did not violate HRCP Rule

77(d) in failing to immediately enter and serve a notice of the

entry by mail of the minute order [entering a default judgment

against the appellant] because HRCP Rule 77(d) applies to only

final orders or judgments and is not applicable to minute

orders"); <u>see also</u> <u>Pettit</u>, 217 F.3d at 1080 (concluding the

debtors' interest in deposited funds was "extinguished" when the

district judge entered final judgment and ordered funds released

to the prevailing party; and that the clerk of court's issuance

of the check pursuant to the order was "purely ministerial").

In any event, the Court need not dwell on the

comparative effects of minute orders and final judgments under

Hawai`i law.  Appellant cites no authority in support of his assertions that:  1) the controlling transfer occurred at least by the state court's entry of the January 30, 2015 Minute Order; and 2) the date when the state court entered its final judgment may be disregarded as a ministerial acts.  These bare assertions are insufficient to warrant reversal.  <u>See</u> <u>Greenwood</u>, 28 F.3d at 977.

### <u>CONCLUSION</u>

On the basis of the foregoing, Appellant Thomas W. Coulson's appeal, filed August 31, 2017, is HEREBY DENIED and the bankruptcy court's Order, filed August 17, 2017 is HEREBY AFFIRMED.

The Clerk's Office is DIRECTED to enter final judgment and to close this case on **July 16, 2018**, unless a motion for reconsideration of this Order is filed not more than fourteen days after this written order is filed.  <u>See</u> LR60.1

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 29, 2018.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**THOMAS W. COULSON VS. ELIZABETH KANE; CV 17-00437 LEK-KSC; ORDER DENYING APPEAL AND AFFIRMING THE BANKRUPTCY COURT'S ORDER**